# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| Erin Farmer, individually and on behalf of all others similarly situated, | | |
| | Plaintiff, | |
| - against - | | Class Action Complaint |
| Aldi Inc., | | |
| | Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     Aldi Inc. ("Defendant") manufactures strawberry and watermelon flavored drink enhancers which purports to get its strawberry and watermelon taste only from natural flavoring ingredients under its Fit & Active brand ("Product").



## I.   CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

2.   According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

3.   According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

4.   According to Consumers Union, over 80% of consumers expect that the word "natural," in almost any context, on a food label means that a food does not contain any artificial ingredients.

5.   Explanations for why consumers prefer foods containing natural, instead of artificial ingredients, are varied.

6.   Consumers seek to avoid artificial flavors because they are weary of ingredients which are highly processed with chemical additives and synthetic solvents in laboratories.

7.   According to Nielsen's Global Health & Wellness Survey, the absence

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

of artificial flavors is very important for over 40% of consumers.

8.     The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

9.     Mintel announced that consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

10.    Almost half of Americans seek out foods with natural flavorings, compared to ten percent who prefer artificial flavorings.

11.    A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place on their ingredient lists.[5]

12.    According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would

---

[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

[5] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

pay more for such foods.

13.   Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   INCREASED CONSUMPTION OF WATER ENHANCERS

14.   According to Mordor Intelligence's US Water Enhancer Market Analysis, the market for water enhancers, defined as non-caloric flavored liquid concentrates, is increasing at close to ten percent a year.[6]

15.   Several reasons are behind this explosive growth.

16.   First, rising levels of obesity has made the population more reluctant to consume sugary drinks, whether fruit juices or carbonated soft drinks ("CSD").

17.   Second, in place of these calorie-laden drinks, public health officials and the media have emphasized substituting water, a non-caloric and healthier alternative.

18.   However, "many consumers want more from their water" because of its naturally "plain" taste compared to the flavor of the sodas and fruit juices they are giving up.[7]

19.   Increasing consumer avoidance of artificial flavoring ingredients has

---

[6] Mordor Intelligence, United States Water Enhancer Market – Growth, Trends, Covid-19 Impact, And Forecasts (2023 – 2028)

[7] Isaac Fletcher, Water is Getting a New Image (And Taste) From Enhancers, Food Online, May 21, 2014.

made companies focus on delivering authentic and intense taste experiences while using only natural flavoring ingredients.

## III.  FLAVOR SOURCE REQUIRED TO BE DISCLOSED

20.   Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as its taste and the source of that taste.[8]

21.   The Food and Drug Administration ("FDA") was aware of the importance of disclosing the source of a food or beverage's flavor to consumers when it acted at the direction of Congress to establish consistent rules to facilitate consumer choice and prevent deception.[9]

22.   First, it defined a flavor as a substance which imparts taste. 21 C.F.R. § 101.22(a)(1) and (3).

23.   Flavor compounds of fruits and vegetables include (1) nonvolatiles like

---

[8] Lancelot Miltgen, Caroline, Gaëlle Pantin Sohier, and Bianca Grohmann. "Communicating sensory attributes and innovation through food product labeling." Journal of food products marketing 22.2 (2016): 219-239; Blackmore, Helena, Claire Hidrio, and Martin R. Yeomans. "A taste of things to come: The effect of extrinsic and intrinsic cues on perceived properties of beer mediated by expectations." Food Quality and Preference 94 (2021): 104326; Okamoto, Masako, and Ippeita Dan. "Extrinsic information influences taste and flavor perception: A review from psychological and neuroimaging perspectives." Seminars in cell & developmental biology. Vol. 24. No. 3. Academic Press, 2013.

[9] This State adopted these identical federal regulations.

sugars, amino acids, fatty acids, and organic acids and (2) volatiles like aromatic hydrocarbons, aldehydes, acetals, ketones, alcohols, esters, and sulfur compounds.

24.    Second, it required that that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," it is considered its "characterizing flavor," and its source must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

25.    According to one scholar, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[10]

26.    "Natural flavor" was defined as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables which provides flavor. 21 C.F.R § 101.22(a)(3).

27.    "Artificial flavor" refers to substances providing flavor from non-natural sources other than fruits and vegetables. 21 C.F.R § 101.22(a)(1).

## IV.  FLAVOR OF WATERMELON AND STRAWBERRY

28.    Taste is a combination of sensations arising from specialized receptor cells in the mouth.[11]

---

[10] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[11] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

29.   Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

30.   Taste is complex, with the taste of sour including the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples and cherries (malic acid), and wines (tartaric acid).

31.   Each of those acids is responsible for unique sensory characteristics of sourness.

32.   Consumer acceptability of the flavor of watermelon and strawberry is based on their perceived sweetness, sourness, and tartness.

33.   The prototypical watermelon and strawberry taste is based on the interaction of their free sugars, mainly glucose and fructose, volatile compounds and predominant organic acids to create their unique tart, sour and sweet flavor.[12]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid, Succinic Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |

---

[12] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| | | |
|---|---|---|
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

34.   For watermelon, malic acid is the first predominant acid while in strawberries it is the second predominant acid.

35.   The amount and proportion of malic acid is a critical factor in producing the preferred watermelon and strawberry taste.

36.   L-Malic acid gives watermelon and strawberries their characteristic tart, sour and sweet taste valued by consumers.

## V.   LABEL OMITS ADDED ARTIFICIAL FLAVORING

37.   The front label statements of "Strawberry Watermelon" and "Natural Flavor With Other Natural Flavors," with pictures of a fresh watermelon wedge and ripe strawberry appeals to the more than seven out of ten consumers who avoid

artificial flavors.

38.   By representing the Product's watermelon and strawberry taste as being from natural flavoring, consumers will not expect its taste to be provided by artificial flavoring ingredients.

39.   While the ingredient list in small print on the back lists "Natural Flavor" as the eighth most predominant ingredient by weight, this is significantly less than "Malic Acid," listed third.



**INGREDIENTS:** WATER, PROPYLENE GLYCOL, MALIC ACID, CITRIC ACID, CONTAINS 2% OR LESS OF: SUCRALOSE, ACESULFAME POTASSIUM, NATURAL COLOR, NATURAL FLAVOR, POTASSIUM CITRATE, POTASSIUM SORBATE (PRESERVATIVE).

40.   Even if a consumer reviewed the fine print ingredient list on the back label, they would not know which version of "Malic Acid" the Product uses.

9

41.   This is because malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid, which are similar to right and left-hand versions of the same molecular formula.[13] 21 C.F.R. § 184.1069.



42.   L-Malic Acid occurs naturally in watermelons and strawberries, while D-Malic Acid does not occur naturally anywhere.

43.   D-Malic Acid is most commonly found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

44.   It is made through a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at roughly 180°C.

45.   This results in an equilibrium mixture of malic and fumaric acids.

46.   The soluble fumaric acid is filtered off and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

---

[13] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

47. Laboratory analysis using chiral HPLC and/or enzymatic methods with D-malate dehydrogenase (D-MDH) concluded that the malic acid used in the Product was the artificial DL-Malic Acid by identifying the synthetic D-isomer.

48. This was because D-Malic acid was preferentially oxidized over L-Malic acid.

49. Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavor of watermelon and strawberries, "Strawberry Watermelon" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Strawberry Watermelon Flavored" or "Artificially Flavored Strawberry Watermelon." 21 C.F.R. § 101.22(i)(2).

50. The combination of DL-Malic Acid with sugars is not equivalent to the natural flavors from watermelon and strawberries.

51. The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the tart and sweet taste that watermelon and strawberries are known for.

52. Defendant could have added more watermelon and strawberry ingredients or L-Malic Acid from watermelon and strawberry but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of watermelon and strawberry.

53. DL-Malic Acid is not a "natural flavor" as defined by federal and state

11

regulations, because it is not from a fruit, vegetable, or other natural source, but from petroleum and made through chemical reactions.

54.   DL-Malic Acid does not supplement, enhance, or modify the original taste of watermelon and strawberry, because it is a core component of these fruits' taste. 21 C.F.R. § 170.3(o)(11).

## JURISDICTION AND VENUE

55.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

56.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

57.   Plaintiff is a citizen of Florida.

58.   Defendant is a citizen of Illinois.

59.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

60.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product is sold at over two hundred of Defendant's stores in Florida and via its website to Florida consumers.

61.   Venue is in the Tampa Division in this District because Plaintiff resides in Hernando County and a substantial part of the events or omissions giving rise to these claims occurred in Hernando County, her purchase and consumption of the

Product in reliance on the labeling identified here.

## **PARTIES**

62.   Plaintiff Erin Farmer is a citizen of Hernando County, Florida.

63.   Defendant Aldi Inc. is an Illinois corporation with a principal place of business in Illinois.

64.   Aldi is the common brand of two German-owned supermarket chains operating over ten thousand stores across 20 countries, with annual sales exceeding $75 billion.

65.   In the United States, Aldi operates more than 2,000 stores across 36 states, of which more than two hundred are in Florida.

66.   Defendant is known for selling the highest quality goods, based on its "no frills"approach which saves costs, which are passed on to the consumer.

67.   While Aldi sells leading national brands, they sell hundreds of products under their private label Fit & Active brand.

68.   Private label products are made by third party manufacturers and sold under the name of the retailer, or its sub-brands.

69.   Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to national brand counterparts.

70.   Products under the Fit & Active brand have an industry-wide reputation

for quality and value.

71.   In releasing products under the Fit & Active brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

72.   Defendant gets national brands to produce its private label items due to its loyal customer base and tough negotiating.

73.   That Fit & Active-branded met this high bar was proven by focus groups, which rated them above the name brand equivalent.

74.   Private label products generate higher profits for Aldi because national brands spend significantly more on marketing, contributing to their higher prices.

75.   A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good.

76.   Private label products under the Fit & Active brand benefit by their association with consumers' appreciation for the Aldi brand overall.

77.   The development of private label items is a growth area for Aldi, as they select only top suppliers to develop and produce Aldi products.

78.   The Product is available to consumers from Defendant's retail stores and its website.

79.   Plaintiff read "Strawberry Watermelon" and "Natural Flavor With Other

Natural Flavors," and saw the pictures of a fresh watermelon wedge and ripe strawberry and took notice that the front labels lacked any references to artificial flavoring that provided the Product's watermelon and strawberry taste.

80. Plaintiff expected the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste.

81. Plaintiff is part of the majority of consumers who avoid artificial flavors for the above-identified reasons related to health, nutrition and the environment.

82. Plaintiff was unaware the Product contained artificial flavoring ingredients to provide its watermelon and strawberry taste because this was not disclosed to her on the front label, which is where she expected to see this information.

83. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

84. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Aldi locations in Hernando County, between August 2021 and the present.

15

85.   Plaintiff bought the Product at or exceeding the above-referenced price.

86.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components such as the source of their fruit taste.

87.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

88.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1.75 for 1.62 oz (48 mL), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

89.   Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought them or paid less.

90.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

91.   Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar products which represent the source of their main fruit

flavoring ingredients because she is unsure whether those representations are truthful.

92.  If Defendant's labeling were to be truthful, Plaintiff could adequately rely on the labeling of other fruit flavored products.

## CLASS ALLEGATIONS

93.  Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida Class:** All persons in the State of Florida who purchased the Product within the statutes of limitations for each cause of action alleged.

94.  Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

95.  Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

96.  Plaintiff is an adequate representative because her interests do not conflict with other members.

97.  No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

17

98.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

99.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

100. Plaintiff seeks class-wide injunctive relief because the practices continue.

## CAUSES OF ACTION

## COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

101. Plaintiff incorporates by reference preceding paragraphs 1-63.

102. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

103. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

104. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a

watermelon and strawberry taste and not added artificial flavoring ingredients.

105. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

106. Plaintiff and class members relied upon these representations and omissions of any front label disclosure about artificial flavoring in deciding to purchase the Product.

107. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

109. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

110. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

111. Defendant should also be ordered to cease its deceptive advertising and

should be made to engage in a corrective advertising campaign to inform consumers that the Product contains artificial flavoring ingredients to provide its main watermelon and strawberry taste.

## COUNT II

### False and Misleading Adverting,
### Fla. Stat. § 817.41

112. Plaintiff incorporates by reference preceding paragraphs 1-63.

113. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

114. Defendant made misrepresentations and omissions of material fact, that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

115. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

116. Defendant knew that these statements were false.

117. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

118. Plaintiff and class members did in fact rely upon these statements.

119. Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

120. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

121. Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

122. Plaintiff incorporates by reference preceding paragraphs 1-63.

123. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

124. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

21

125. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as flavoring provided from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients and developed its marketing and labeling to directly meet those needs and desires.

126. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

127. Defendant affirmed and promised that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

128. Defendant described the Product so Plaintiff and consumers believed its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

129. Defendant had a duty to disclose and/or provide non-deceptive

descriptions and marketing of the Product.

130. This duty is based on Defendant's outsized role in the market for these types of products, custodian of the Fit & Active brand, a trusted seller of high-quality products, exceeding national brand competitors.

131. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

132. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Products' express and implied warranties associated with the Product.

133. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

134. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

135. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on its packaging, container, or label, because it was marketed as if its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

23

136. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients and she relied on Defendant's skill and judgment to select or furnish such suitable products.

## COUNT IV

## Fraud
## (Fed. R. Civ. P. 9(b) Allegations)

137. Plaintiff incorporates by reference preceding paragraphs 1-63.

138. Defendant misrepresented that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients, by omitting the required "artificially flavored" disclosure from the front label.

139. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

140. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake."

141. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

142. WHO: Defendant, Aldi, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

143. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

144. Defendant omitted that the Product contains artificial flavoring to provide its watermelon and strawberry taste.

145. Defendant knew or should have known this information was material to all reasonable consumers and impacts consumers' purchasing decisions.

146. Yet, Defendant has and continues to represent that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural

flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

147. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients, continuously throughout the applicable Class period(s) and through the filing of this Complaint.

148. WHERE: Defendant's material misrepresentations and omissions, that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying it will inevitably see and take notice of.

149. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that its watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients.

150. As such, Defendant's representations are false and misleading.

26

151. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Products.

152. WHY: Defendant misrepresented that the Product's watermelon and strawberry taste was from watermelon, strawberries and/or natural flavoring ingredients that provided a watermelon and strawberry taste and not added artificial flavoring ingredients for the express purpose of inducing Plaintiff and class members to purchase the Products at a substantial price premium, in part based on consumer demand for products without artificial flavoring ingredients.

153. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida.

## COUNT V

### Unjust Enrichment

154. Plaintiff incorporates by reference preceding paragraphs 1-63.

155. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

27

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   July 13, 2023

Respectfully submitted,

 /s/ *William Wright*
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*\*Pro Hac Vice* Application Forthcoming

28