## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ERIN FARMER, individually and on behalf of all others similarly situated,

      Plaintiff,

   v.

ALDI INC.,

      Defendant.

Case No. 8:23-cv-1583-KKM-SPF

The Hon. Kathryn Kimball Mizelle

## MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................. 1

RELEVANT REGULATORY BACKGROUND ........................................ 3

ALLEGATIONS OF THE COMPLAINT .............................................. 4

ARGUMENT ...................................................................................... 5

I.     Plaintiff Has Not Plausibly Alleged That Malic Acid Is a "Flavor." .............. 5

II.    Plaintiff Has Not Plausibly Alleged That the Product's Labeling Is
       Misleading. ............................................................................. 9

III.   Plaintiff Lacks Article III Standing. ............................................. 15

IV.    Plaintiff's Tag-Along Claims Also Fail. ......................................... 19

CONCLUSION .................................................................................. 20

## **INTRODUCTION**

ALDI Inc. moves to dismiss Plaintiff's First Amended Class Action Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted and pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.  ALDI seeks dismissal with prejudice.

This consumer class action accuses ALDI of misleading consumers by failing to disclose that its Strawberry Watermelon Fit & Active liquid water enhancer (the "Product") contains "artificial flavors."  Notably, Plaintiff does not—and cannot—point to any representation that the Product is free of artificial flavors.  Nor does she allege that reasonable consumers expect a pocket-sized, shelf-stable container of flavored liquid beverage concentrate to be made from real fruits or free of artificial flavors.  Plaintiff nonetheless alleges that the presence of malic acid (which she baselessly characterizes as an "artificial flavor") requires ALDI to disclose the presence of artificial flavors on the labeling and that the omission of this supposed fact from an FDA-mandated regulatory disclosure on the product label is misleading.  Plaintiff's lawsuit fails for at least three fundamental reasons.

First, Plaintiff's factual allegations do not establish that the malic acid in the Product acts as a "flavor."  While Plaintiff alleges that the malic acid in the Product "imparts, creates, simulates and/or reinforces the tart and sweet taste that watermelon and strawberries are known for" (FAC ¶ 51), that boilerplate allegation does not establish that malic acid provides the Product with its "characterizing" watermelon and strawberry flavor—as Plaintiff must plausibly allege to establish

that it acts as an "artificial flavor." *See* 21 C.F.R. § 101.22.  To the contrary, Plaintiff openly admits that malic acid is the "predominant" acid in a wide range of fruits, including apples, apricots, cherries, grapes, and pears.  FAC ¶ 33.  Given that admission, as well as Plaintiff's generalized allegation that malic acid provides a "tart, sour and sweet taste" (*id.* ¶ 36), it is far more plausible that the malic acid acts as a "flavor enhancer" or a "pH balancer"—which are not "flavors" and do not require an "artificial flavor" disclosure under the applicable FDA regulations.

Second, even if Plaintiff *had* plausibly alleged that the malic acid in the Product acts as an "artificial flavor," her lawsuit still fails because ALDI does not claim that the Product—a pocket-sized, zero-calorie, shelf-stable liquid beverage concentrate—is free of "artificial flavors."  Plaintiff attempts to circumvent this result by arguing that the FDA-mandated statement "Natural Flavor with Other Natural Flavors" implies that the Product's flavor derives "only from natural flavoring ingredients."  FAC ¶ 1.  But neither that statement nor the omission of an "artificially flavored" disclosure renders the labeling false or misleading.  Even if Plaintiff's allegations could arguably establish a technical violation of an FDA regulation, that is insufficient to support a private civil action for consumer fraud.

Third, even if Plaintiff's allegations satisfied Rule 12(b)(6), which they do not, Plaintiff lacks standing under Rule 12(b)(1) because her allegations do not establish that she has suffered any legally cognizable injury-in-fact.  Regardless of whether the malic acid in the Product acts as a "flavor," and regardless of what the FDA regulations do or do not require, Plaintiff's allegations establish that she

received exactly what she paid for—a convenient, shelf-stable, liquid water enhancer that makes plain water taste like strawberries and watermelons.  A Florida federal court recently applied this reasoning in dismissing a case—filed by Plaintiff's counsel—alleging that the use of the phrase "honey-lemon" to describe honey-lemon-flavored cough drops did not constitute an injury in fact, even if the cough drops contained fewer "lemon ingredients" than the plaintiff would have preferred.  *See Valiente v. Publix Super Markets, Inc.*, No. 22-22930, 2023 WL 3620538 (S.D. Fla. May 24, 2023).  That reasoning applies with equal force here.

Plaintiff's lawsuit is flawed beyond repair.  This Court should dismiss it without leave to amend.

## **RELEVANT REGULATORY BACKGROUND**

The FDA has promulgated a regulation, 21 C.F.R. § 101.22, that governs the use and labeling of flavoring agents in food products.  If a product label includes a representation about the product's "characterizing flavor" (*e.g.*, strawberry), and the characterizing flavor comes from "natural flavor" derived from the characterizing food ingredient, the regulation directs the manufacturer to state that the product is "strawberry flavored" or "natural strawberry flavored."  *Id.* § 101.22(i)(1)(i).  If the product contains both a characterizing flavor derived from the characterizing ingredient and "other natural flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to add the nomenclature "with other natural flavor."  *Id.* § 101.22(i)(1)(iii).  But if the food "contains any *artificial* flavor which simulates, resembles or reinforces the

characterizing flavor," the regulation directs the manufacturer to describe the product as "artificially flavored."  *Id.* § 101.22(i)(2) (emphasis added).

Critically, these regulations apply only to "flavoring agents and adjuvants"— *i.e.*, "[s]ubstances added to impart or help impart a taste or aroma in food."  *Id.* § 170.3(o)(12).  They do not apply to "flavor enhancers," which are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own."  *Id.* § 170.3(o)(11). Because "flavor enhancers are not flavorings," the FDA has made clear that they need not be disclosed on the front label but instead "must be declared in the ingredient list by their common or usual names."  Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592, 28598 (June 21, 1991) ("FDA's regulations describing the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers.'").

## ALLEGATIONS OF THE COMPLAINT

ALDI sells a variety of flavored liquid water enhancers, including the Product, under its "Fit & Active" brand.  These products are shelf-stable, sugar-free, pocket-sized plastic squeeze bottles that consumers can squeeze into plain water to enhance its taste.  These liquid water enhancers come in many varieties, including the "Strawberry Watermelon" variety at issue here.

The Product derives its signature taste from natural flavors, which it discloses in the ingredient list on the back of each package.  *See* FAC ¶ 39 (ingredient list).  Consistent with the FDA regulations, ALDI accurately states in a

mandatory regulatory disclosure on the front of each label the Product contains "Natural Flavor with Other Natural Flavors." *See id.* ¶ 1. The Product also contains malic acid, which balances the Product's acidity and which ALDI discloses in the ingredient list. *See id.* ¶ 39; *see also id.* ¶ 36 (admitting that malic acid provides a "characteristic tart, sour and sweet taste"). Plaintiff alleges that the "addition of DL-Malic Acid imparts, creates, simulates, resembles, and/or reinforces the tart and sweet taste that watermelon[s] and strawberries are known for." *Id.* ¶ 51. And because the malic acid is allegedly "artificial" and allegedly acts as a "flavor," Plaintiff claims that ALDI misleads consumers by failing to disclose the presence of artificial flavor and by including the phrase "Natural Flavor with Other Natural Flavor" on the Product's front label. *See id.* ¶¶ 37–38, 49.

Based on these allegations, Plaintiff asserts claims for: (1) violations of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*; (2) "false and misleading advertising" in violation of Fla. Stat. § 817.41; (3) "breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose and Magnuson Moss Warranty Act"; (4) common-law fraud; and (5) unjust enrichment. *See* FAC ¶¶ 101–55 (capitalization omitted). Plaintiff asserts these claims on behalf of a putative Florida class. *See id.* ¶ 93.

## ARGUMENT

### I. Plaintiff Has Not Plausibly Alleged That Malic Acid Is a "Flavor."

Plaintiff's lawsuit is premised on her allegation that the malic acid in the Product constitutes an "artificial flavor." That requires Plaintiff to establish not

only that the malic acid is "artificial," but also that it acts as a "flavor"—which, in turn, requires her to plausibly allege that it "simulates, resembles, or reinforces the "*characterizing flavor*" of the product.  21 C.F.R. § 101.22(i)(1) (emphasis added); *see also id.* § 101.22(i) (noting that the "primary recognizable flavor" of a product, as depicted through words or vignettes, is its "characterizing flavor").

In other words, it is not enough for Plaintiff to allege that malic acid may incidentally affect the Product's taste or "amplify whatever characterizing flavor it has from another source."  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).  Rather, to establish that malic acid acts as an "artificial flavor," Plaintiff must plausibly allege that it "give[s] the product an *original taste*." *Id.* (emphasis added).  Plaintiff has not come close to doing so.  If anything, her allegations suggest that ALDI uses malic acid as a "flavor enhancer"—*i.e.*, a "[s]ubstance[] added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own"— and not as a "flavor."  21 C.F.R. § 170.3(o)(11).

As Plaintiff notes in her complaint, malic acid is one of the acids "responsible for unique sensory characteristics of sourness."  FAC ¶¶ 30–31.  But that does not mean malic acid "imparts, creates, simulates, resembles and/or reinforces the tart and sweet taste that watermelon[s] and strawberries are known for."  *Id.* ¶ 51.  Even if tartness may be a *component* of the Product's flavor profile, that does not mean that it is the "primary recognizable flavor" of the Product, as would be required for it to function as the Product's "characterizing flavor."  21 C.F.R. § 101.22(i).

Indeed, Plaintiff's own allegations fatally undermine her claim that malic acid provides the Product with its "characterizing" strawberry and watermelon flavor. *Cf. Fenn v. Litton Loan Servicing LP*, No. 10-965, 2010 WL 8318866, at *2 (M.D. Fla. Dec. 10, 2010) ("[A] plaintiff can plead himself out of court . . . [i]f he alleges facts that show he isn't entitled to a judgment . . . .") (citation and internal quotation marks omitted). As Plaintiff notes, malic acid serves as the "predominant" acid in a wide variety of fruits—such as apples, cherries, grapes, and pears—that taste nothing like one another. FAC ¶ 33. But it is not plausible that malic acid serves as a magic ingredient that simultaneously tastes like half of the fruits in the produce aisle. Even if malic acid may serve as *one component* of the overall flavor profile of multiple fruits, that does not mean it simulates, resembles, or reinforces the "primary recognizable flavor" of *any* of these fruits— which means that the FDA does not regard it as a "flavor," artificial or otherwise.

In other words, even if Plaintiff were correct that malic acid increases the Product's sourness or tartness, that establishes only that it "enhances" and "modifies" the characteristic strawberry and watermelon flavor of the Product— which makes it a textbook example of a "flavor enhancer." 21 C.F.R. § 170.3(o)(11). In fact, the FDA has explicitly recognized that malic acid can be used for this purpose.[1] *See* 21 C.F.R. § 184.1069(c). And in distinguishing "flavors" from "flavor

---

[1] The FDA has also recognized that malic acid can be used as a "pH control agent." 21 C.F.R. § 184.1069(c), *see also id*. § 170.3(o)(23) (defining a "pH control agent" as a "[s]ubstance[] added to change or maintain acidity or basicity"). Indeed, the USDA has expressly recognized that "[t]he main use of synthetic malic acid is pH adjustment." RJN Ex. 1.

enhancers," the FDA has made clear that flavor enhancers are not subject to the FDA's regulations governing the disclosure of natural and artificial flavors. *See* 56 Fed. Reg. at 28598 (noting that "flavor enhancers are not flavorings" and that the "regulations describing the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers'").

Many courts have dismissed similar lawsuits absent plausible allegations that the challenged ingredient served the function the plaintiff claimed it did. For example, in *Ivie v. Kraft Foods Global, Inc.*, the court dismissed a lawsuit alleging that the defendant misrepresented its products as containing "natural flavors" when they contained sodium citrate and potassium citrate, which the plaintiff characterized as "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* In so holding, the court emphasized that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042 (alteration in original).

Similarly, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed this lawsuit, holding that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the product. *See*

*id*. at 821–22.   In reaching this conclusion, the court rejected the plaintiff's argument that reasonable consumers would still view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product."   *Id*. at 821.   And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its [p]roducts," the court found that these "arguments and speculations are not supported by well-pleaded factual allegations" and that it "need not accept them as true."   *Id*. at 822–23.

Here, as in *Ivie* and *Hu*, Plaintiff has not plausibly alleged that the malic acid in the Product acts as a *flavor*, as opposed to a flavor enhancer or a pH balancer. Even if Plaintiff's allegations were sufficient to establish that malic acid *could* act as a "flavor" (which they are not), the "mere possibility" that it functions as a flavor is not enough to state a plausible claim the Product contains "artificial flavors." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation and internal quotation marks omitted).   Absent any plausible allegation that malic acid provides a "characteristic taste or aroma of its own" and does not merely "enhance" or "modify" other flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss Plaintiff's lawsuit.

## II.   Plaintiff Has Not Plausibly Alleged That the Product's Labeling Is Misleading.

Plaintiff's claims of deception hinge on her allegation that the FDA-mandated statement "natural flavor with other natural flavors" suggests to reasonable consumers that the Product's "strawberry and watermelon taste" derives "only from natural flavoring ingredients."   FAC ¶ 1.   Plaintiff does not (and

cannot) identify any claim on the label that the Product is "all natural" or free of artificial flavors.  Instead, she alleges that, because the Product's labeling "lacked any references to artificial flavoring that provided the Product's watermelon and strawberry taste," it misled her to believe that "the Product's watermelon and strawberry taste was from watermelon, strawberries, and/or natural flavoring ingredients that provided a watermelon and strawberry taste." *Id.* ¶¶ 79–80.

But Plaintiff has not plausibly alleged that the omission of an "artificial flavor" disclosure is "likely to mislead [a] consumer acting reasonably in the circumstances"—as she must allege to prevail on her claims under Florida's consumer protection statutes. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (citation and internal quotation marks omitted).  This "reasonable consumer" standard "requires a showing of *probable*, not possible deception." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (emphasis added) (citations and internal quotation marks omitted). Plaintiff's allegations do not come close to satisfying this standard.

It is beyond dispute that ALDI does not represent that the Product is "all natural" or free of artificial ingredients.  Moreover, common sense—which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679)— makes clear that a reasonable consumer would not assume that a shelf-stable, fruit-flavored liquid beverage concentrate is free of artificial ingredients. *Cf. Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759–60 (W.D. Mo. 2015) (dismissing lawsuit alleging that potato chips were mislabeled as "natural" because

they contained allegedly "artificial" ingredients and holding that the plaintiff's understanding of the "natural" statement was implausible as applied to potato chips, which are "manufactured in mass") (internal quotation marks omitted). Absent any *affirmative* representation that the Product is "all natural" or free of artificial ingredients, the omission of an "artificial flavor" disclosure would not change reasonable consumers' expectations about the ingredients in the Product.

*Gouwens v. Target Corp.*, No. 22-50016, 2022 WL 18027524 (N.D. Ill. Dec. 30, 2022), is instructive. There, the plaintiff (represented by Plaintiff's counsel here) alleged that Target misled consumers by failing to describe its fruit punch-flavored liquid water enhancer as "artificially flavored," even though it contained allegedly "artificial" DL-malic acid.[2] *Id.* at *1. The court dismissed this lawsuit and held that the plaintiff "fail[ed] to plausibly allege that this omission would mislead a significant portion of the targeted consumers to be deceived or misled." *Id.* at *3. As the court explained, "[a] reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water enhancer was free of artificial

---

[2] Plaintiff's counsel has filed numerous lawsuits throughout the country challenging the labeling of products that contain malic acid. In this District alone, Plaintiff's counsel has filed at least seven other lawsuits alleging that malic acid acted as an "artificial flavor" in a wide array of products. *See, e.g.*, *Adams v. Kraft Heinz Co.*, No. 22-290 (Berry Pomegranate and Tropical Cherry liquid water enhancers); *McCall v. Publix Super Markets, Inc.*, No. 22-584 (Strawberry Watermelon liquid water enhancer); *Henderson v. Blue Diamond Growers*, No. 23-289 (Habanero BBQ almonds); *Broodie v. Target Corp.*, No. 23-955 (Berry Pomegranate liquid water enhancer); *Thompson v. Walmart Inc.*, No. 23-1002 (Peach Tea liquid water enhancer); *Griffin v. Publix Super Markets, Inc.*, No. 23-1490 (Apple Cinnamon Fruit & Grain cereal bars); *Phillips v. Kraft Heinz Foods Co.*, No. 23-1741 (Blueberry Raspberry liquid water enhancer). The sheer volume of these cases—as well as the sheer volume of "characterizing flavors" that malic acid allegedly simulates, resembles, or reinforces—underscores the implausibility of Plaintiff's allegation that malic acid acts as an "artificial flavor" or that ALDI's failure to label the Product as "artificially flavored" is likely to mislead reasonable consumers.

ingredients absent an affirmative statement to the contrary." *Id.*

Similarly, in *Willard v. Tropicana Manufacturing Co.*, the plaintiffs alleged that ten Tropicana juice products were mislabeled because they contained malic acid but failed to disclose that they contained "artificial flavors." 577 F. Supp. 3d 814, 820–21 (N.D. Ill. 2021). While the *Willard* court found that plaintiffs had plausibly alleged that the presence of malic acid rendered the phrase "100% Juice Apple Juice" misleading, the court dismissed the plaintiffs' claim that it rendered the phrase "Trop 50 Farmstand Apple Juice" misleading. *See id.* at 833. In so holding, the court emphasized that the product's name, along with the statement "50% less sugar & calories than apple juice," "undermines Plaintiffs' claims that the name of the product and the pictures of apples could mislead consumers into believing that the product only contains natural ingredients." *Id.* And the court similarly dismissed the plaintiffs' claim with respect to eight other juices, finding that the plaintiffs' allegation "that each [p]roduct contains malic acid and fails to disclose that fact on the front labels" was insufficient to establish that "a reasonable consumer would be deceived by the labels." *Id.* at 833–34.

Most recently, in *Boss v. Kraft Heinz Co.*, another federal court dismissed a lawsuit alleging that Kraft Heinz mislabeled its MiO liquid water enhancers—which come in flavors such as "Arctic Grape" and "Tropical Fusion"—because they contained malic acid, which the plaintiffs characterized as an "undisclosed artificial flavoring." --- F. Supp. 3d ----, 2023 WL 5804234, at *1 (N.D. Ill. 2023). Even accepting the plaintiffs' allegation that "malic acid is actually an artificial

flavoring," the court found the labeling not to be deceptive.  *Id.* at *2.  As the court explained, the phrase "Natural Flavor with Other Natural Flavor" did "not amount to an affirmative representation that the [p]roduct is free from artificial flavors." *Id.*  And "absent an affirmative representation that MiO is an 'all-natural' product or free from artificial flavors," the court found that "the omission of an 'artificial flavor' disclosure would not mislead a reasonable consumer into believing that the [p]roducts are completely natural and free from artificial flavors." *Id.*

Here too, nothing about the Product's labeling even *arguably* suggests it is "natural" or free of artificial ingredients.  Rather, the labeling of the Product— which appears on shelves next to pocket-sized bottles of "Orange Tangerine," "Fruit Punch," "Black Cherry," and "Mixed Berry" liquid water enhancers—clarifies to reasonable consumers that it is *not* "natural."  As in *Gouwens*, *Willard*, and *Boss*, Plaintiff's allegation that the Product contains malic acid but fails to state that it is "artificially flavored" does not establish reasonable consumer deception.

Plaintiff attempts to plead around this argument by alleging that 21 C.F.R. § 101.22 requires ALDI to disclose the presence of artificial flavor on the front label. *See* FAC ¶ 49.  But this argument fails, as Plaintiff does not allege—let alone with any degree of plausibility—"that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations."  *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *see also, e.g.*, *Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("[T]he ultimate

question . . . is what a reasonable consumer expects, which may have absolutely no relation to FDA regulations.").  Absent any plausible allegation that consumers are aware of 21 C.F.R. § 101.22 or that it guides their expectations about the presence of artificial flavors, Plaintiff has not plausibly alleged that the omission of an "artificial flavor" disclosure is misleading.

Finally, even if Plaintiff were correct that ALDI's alleged failure to disclose the presence of "artificial flavors" violated 21 C.F.R. § 101.22 (which she is not), the Federal Food, Drug & Cosmetic Act ("FDCA") does not permit private plaintiffs to police alleged violations of FDA regulations.  *See* 21 U.S.C. § 337(a); *see also, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1284, 1310 (S.D. Fla. 2021) ("There is no private right of action to enforce the FDCA.") (citing *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002)).  It is accordingly irrelevant whether ALDI's alleged failure to disclose the presence of "artificial flavor" in the Product might hypothetically violate 21 C.F.R. § 101.22, as Congress has chosen not to allow private plaintiffs to enforce that regulation.

Indeed, earlier this year, another district court applied this exact reasoning in dismissing a virtually identical lawsuit—filed once again by Plaintiff's counsel here—challenging Coca-Cola's failure to label its Fanta soda as "artificially flavored" even though it contained malic acid.  *See Hawkins v. Coca-Cola Co.*, --- F. Supp. 3d ----, 2023 WL 1821944 (S.D.N.Y. 2023).  In so holding, the *Hawkins* court emphasized that there is no private right of action to enforce the FDA's food labeling regulations and that "the conduct alleged to violate the FDA regulations is

not so inherently deceptive as to be misleading to a reasonable consumer." *Id*. at *8 (citation and internal quotation marks omitted).

That reasoning applies with equal force here. Florida law does not permit Plaintiff to enforce the FDA's food labeling regulations absent a plausible allegation that the purported regulatory violation is *independently* deceptive. *See Zantac*, 546 F. Supp. 3d at 1310. Absent any such allegation, Plaintiff cannot state a consumer fraud claim premised on an alleged violation of 21 C.F.R. § 101.22.

## III. Plaintiff Lacks Article III Standing.

To have Article III standing, Plaintiff must allege "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Any such "injury-in-fact" must be "real," "not abstract," and "affect the plaintiff in a personal and individual way." *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (citation, alterations, and internal quotation marks omitted). Plaintiff's complaint does not come close to pleading a legally cognizable injury-in-fact.

Plaintiff's supposed injuries hinge on her allegation that she "paid more for the Product than she would have paid had she known the representations were false and misleading," as she "would not have bought [it]" or would have "paid less" had she known that it contained malic acid. FAC ¶ 89. But even if she were correct that the malic acid in the Product acts as an "artificial flavor" or that the labeling runs afoul of 21 C.F.R. § 101.22 (which she is not), that does not change the fact that Plaintiff received exactly what she paid for—a shelf-stable liquid beverage

concentrate that makes plain water taste fruity.  And even if Plaintiff regrets paying what she paid for the Product, her "buyer's remorse" does not amount to a concrete or particularized injury-in-fact.  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-2924, 2023 WL 4765409, at *13 (S.D. Fla. July 26, 2023).

*Valiente*—a recent case from another Florida district court—is instructive. The plaintiff (represented by Plaintiff's counsel here) alleged that the labeling of Publix Honey Lemon cough drops was misleading because it falsely suggested that "the product contained a non-negligible amount of lemon ingredients."  2023 WL 3620538, at *1.  Like Plaintiff here, the plaintiff alleged that "he and his proposed class of consumers have been damaged because, had they known the truth, they would not have bought the product or would have paid less for it."  *Id.* (citation, internal quotation marks, and alteration omitted).  The court dismissed this lawsuit and found that the plaintiff had not alleged a cognizable injury-in-fact.

In so holding, the court noted that the plaintiff did "not allege that Publix's honey-lemon cough drops were defective, did not work as advertised, or otherwise were so flawed as to render them worthless."  *Id.* at *5.  Although the plaintiff alleged that Publix's labeling resulted in an economic injury because "he and other Publix customers were deprived of the benefit of their bargain," the court found that this theory of injury failed because he did not "concretely tie the value of the cough drops to any of [the] purported representations" he challenged.  *Id.*  The court accordingly found that the plaintiff's "allegations as to why he has been deprived of the benefit of his bargain all boil down to his subjective, personal

16

expectations of what the cough drops purported to do," and it found that this was "not enough to plausibly allege a concrete economic injury." *Id.*

Similarly, in *Ramirez v. Kraft Heinz Foods Co.*, the plaintiff—represented by Plaintiff's counsel here—alleged that Kraft Heinz falsely claimed that its single-serve cups of macaroni and cheese falsely would be "READY IN 3 1/2 MINUTES," even though the product allegedly took longer to prepare. --- F. Supp. 3d ----, 2023 WL 4788012, at *1 (S.D. Fla. 2023). The plaintiff alleged that this statement resulted in an economic injury because she "paid more for the [p]roduct than she would have paid and would not have purchased it or [would have] paid less had she known the truth." *Id.* at *3 (citation and internal quotation marks omitted). The court dismissed her lawsuit and found that she lacked Article III standing because she "was not deprived of the benefit of her bargain." *Id.*

In reaching this conclusion, the court explained that the plaintiff did "not allege that she was unable consume the product or that it was otherwise so flawed as to be rendered useless." *Id.* at *4. Indeed, the court noted, "the Complaint does not even include an allegation that Plaintiff ever attempted to cook the product" and "contain[ed] no factual allegations of the price she might have paid if Defendant's product was not marketed as ready in three and a half minutes." *Id.* Because the plaintiff's allegations "failed to demonstrate an injury," the court concluded that she lacked Article III standing and dismissed her lawsuit. *Id.*

Here, as in *Valiente* and *Ramirez*, Plaintiff alleges that the Product sold at a "premium price" and that she "would not have bought" the Product or would have

"paid less" for it "absent the misleading representations and omissions." FAC ¶¶ 88–89. But "when a plaintiff purchases a consumable good and uses it to her benefit, there is no economic injury unless she alleges the product failed to work for its intended purpose or was worth objectively less than what one could reasonably expect." *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 21-269, 2022 WL 10197651, at *6 (E.D. Va. Oct. 17, 2022) (citation and internal quotation marks omitted). Plaintiff's subjective dissatisfaction with the Product's labeling does not satisfy this standard. *See Valiente*, 2023 WL 3620538, at *4–5; *In re Zantac*, 2023 WL 4765409, at *13; *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (noting that plaintiffs cannot plead an economic injury by alleging that, "although they purchased [the products] at a given price, they later wished they had not done so"). Absent any plausible allegation that ALDI's labeling resulted in a legally cognizable injury, Plaintiff lacks Article III standing to bring this lawsuit.

Finally, even if Plaintiff had Article III standing to seek damages, she lacks standing to seek an injunction. *See* FAC ¶ 110 ("Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign . . . ."). As the Eleventh Circuit has made clear, a plaintiff who knows of a defendant's alleged "mislabeling" and does not plan to purchase the product at issue until the product is no longer "mislabeled" lacks standing to seek injunctive relief, as she cannot establish a likelihood of future injury. *See Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1256 (11th Cir. 2023); *see also*

*Piescik v. CVS Pharm., Inc.*, 576 F. Supp. 3d 1125, 1131 (S.D. Fla. 2021) (holding that the plaintiff lacked standing to seek injunctive relief against manufacturer of hand sanitizer where he was "acutely aware" of the defendant's alleged misrepresentations). Here too, now that Plaintiff is aware that the Product allegedly contains artificial flavors and has no plans to purchase the Product absent a labeling change, she lacks standing to seek an injunction against ALDI.[3]

## IV.   Plaintiff's Tag-Along Claims Also Fail.

In addition to her consumer fraud claims, Plaintiff also asserts tag-along claims for "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson-Moss Warranty Act," fraud, and unjust enrichment. *See* FAC ¶¶ 121–54. But these claims also fail absent any material misrepresentation on the labeling.

Under Florida law, Plaintiff cannot plead a claim for common-law fraud without plausibly alleging, among other elements, that ALDI made a "false statement concerning a material fact." *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1249–50 (S.D. Fla. 2021) (citations and internal quotation marks omitted); *see also, e.g.*, *Nagel v. Cronebaugh*, 782 So.2d 436, 439 (Fla. 5th DCA 2001) ("[A]n essential element in any claim of fraudulent misrepresentation is . . . that a false statement concerning a material fact was made."). Here, as explained above, ALDI made no misrepresentation of material fact, as Plaintiff has not plausibly alleged

---

[3] During the parties' meet-and-confer pursuant to Local Rule 3.01(g), Plaintiff agreed to withdraw her request for injunctive relief.

that the Product's labeling implies the absence of artificial flavors generally or malic acid specifically. *See* Argument § II. Absent any such allegation, Plaintiff's common-law fraud claim must fail. *See Kurimski*, 570 F. Supp. 3d at 1249–50.

During the parties' meet-and-confer prior to filing this motion, Plaintiff agreed to withdraw her warranty-based claims and her claim for unjust enrichment. But even if Plaintiff had *not* withdrawn these claims, they would fail absent any material misrepresentation. *See, e.g.*, *Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303–04 (9th Cir. 2021) (affirming dismissal of breach of warranty claims that were premised on "the exact same representations as [the plaintiff's] consumer protection claims"); *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (dismissing breach of warranty claims premised on the plaintiff's assertion that the "labeling is materially misleading" where the plaintiff "failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer"); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1141, 1173 (S.D. Fla. 2020) (noting that a claim under the MMWA "requires a valid breach-of-warranty claim" under state law); *Piescik*, 576 F. Supp. 3d at 1135 ("[B]ecause Plaintiff has not adequately alleged any deceptive act, it follows that it is not unjust for Defendant to retain any benefit it purportedly received."). This Court should dismiss these claims as well.

## CONCLUSION

ALDI respectfully requests that the Court dismiss Plaintiff's lawsuit with prejudice and without leave to amend.

  *s/Joshua C. Webb*
_____
Joshua C. Webb (FBN 51679)
Josh.Webb@hwhlaw.com
Val.Taylor@hwhlaw.com
Hill Ward & Henderson, P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, FL  33602
Tel:  (813) 221-3900
Fax:  (813) 221-2900

Dean N. Panos (PHV forthcoming)
dpanos@jenner.com
Jenner & Block LLP
353 North Clark Street
Chicago, IL  60654-3456
Tel:  (312) 923-2765
Fax:  (312) 840-7765

Alexander M. Smith (PHV forthcoming)
asmith@jenner.com
Jenner & Block LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Tel:  (213) 239-2262
Fax:  (213) 239-5199

## **Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), counsel for ALDI certifies that they conferred with counsel for Plaintiff on November 17, 2023 via telephone.  During that meet-and-confer, Plaintiff agreed to withdraw: (1) her claims for breach of express warranty, breach of implied warranty,  and violations of the Magnuson-Moss Warranty Act; (2) her claim for unjust enrichment; and (3) her request for injunctive relief.

    *s/Joshua C. Webb*
Joshua C. Webb (FBN 51679)
Josh.Webb@hwhlaw.com
Val.Taylor@hwhlaw.com
Hill Ward & Henderson, P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, FL  33602
Tel:  (813) 221-3900
Fax:  (813) 221-2900

Dean N. Panos (PHV forthcoming)
dpanos@jenner.com
Jenner & Block LLP
353 North Clark Street
Chicago, IL  60654-3456
Tel:  (312) 923-2765
Fax:  (312) 840-7765

Alexander M. Smith (PHV forthcoming)
asmith@jenner.com
Jenner & Block LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Tel:  (213) 239-2262
Fax:  (213) 239-5199